UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| **PENNY L. DUNLAP** | * | **CIVIL ACTION NO. 10-1432** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Penny L. Dunlap, born December 15, 1967, filed applications for a period of disability, disability insurance benefits, and supplemental security income on February 18, 2008, alleging disability as of June 23, 2007, due to back problems.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the Commissioner's decision comports with all relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of Fed. R. Civ. P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:

**(1) Records from LaSalle General Hospital dated June 16, 2007**. Claimant was admitted for mid and lower back pain after falling 15 feet from a broken swing. (Tr. 163-64). X-rays of the chest, spine, sacrum, and left foot were normal. (Tr. 169-70). Rib x-rays showed a questionable non-displaced fracture of the 10th rib. (Tr. 169). The impression was a fracture of the right 10th rib. (Tr. 165).

**(2) Records from Avoyelles Open MRI dated July 3, 2000 to July 11, 2007**. A cervical MRI dated July 3, 2007, showed small broad-based posterior disc herniations at C5-6 and C6-7 levels which borderline narrowed the AP diameter of the spinal canal, but did not appear to compress the cord nor completely obliterate the anterior subarachnoid space; mild bilateral intervertebral foraminal narrowing at C5-6 and C6-7, and mild posterior bulging of the annulus fibrosis of the C3-4 and C4-5 discs without focal herniation or compressive signs. (Tr. 173). An MRI of the lumbar spine showed very small posterior broad-based disc herniations at L4-5 and L5-S1 that appeared non-compressive, and minute posterior bulging of the annulus fibrosis of the T11-12 and T12-L1 discs. (Tr.

174). An MRI of the brain was negative, except for a small pineal cyst which had not increased in size since a previous exam on September 20, 2005. (Tr. 175-76).

**(3) Records from Dr. Bryan McCann dated September 30, 2005 to March 19, 2008**. Dr. McCann had treated claimant since September 30, 2005, for bronchitis, pain in her left buttock and down her left leg, poison ivy, nerve problems, and mid-back pain. (Tr. 184, 217-18). She reported on June 25, 2007, that she had fallen 14 feet onto her back and broke several ribs. She was given an injection and a prescription for Tylox. (Tr. 185).

On October 10, 2007, claimant was given a refill of Xanax. She complained of straining her left scapula and pleurisy-type pains on January 16, 2008. She was given an injection.

Dr. McCann wrote that "[t]his patient feels that she is disabled."

**(4) Consultative Examination by Dr. Maxcie Sikora dated April 26, 2008**. Claimant complained of back and spine injuries, and possible depression. (Tr. 186). She reported considerable pain, decreased range of motion of her neck, numbness in the tips of her fingers and toes, and difficulty bending, stooping, and crouching. She also said that she had headaches once or twice daily lasting for 15 minutes with occasional nausea, for which she took cyclobenzaprine and tramadol.

Claimant could dress and feed herself, stand for 30 minutes on a good day, walk 20 feet for 30 minutes, and could lift nothing.  She did not drive or do any household chores.  Her medications included methylprednisolone, meloxicam, amitriptyline, cyclobenzaprine, tramadol, and alprazolam.  (Tr. 187).

On examination, claimant was 55 inches tall and weighed 120 pounds.  Her blood pressure was 132/83.  She had slight to moderate difficulty with ambulation, a very stiff gait, and did not flex at her hips or knees.  She was able to get on and off the exam table and up and out of the chair, but tended to use her upper extremity to help her.  (Tr. 188).

On spine and extremities exam, claimant had 2+ radial pulses bilaterally, and 2+ dorsalis pedis posterior tibial bilaterally.  She had no clubbing, cyanosis, or edema.  She required no assistive device.  Her grip strength was slightly diminished on the right at 4+/5 and left was 5/5.

Cervical spine flexion was markedly diminished.  Supine straight leg raise was diminished on the right and left to about 60 degrees.  She was unable to walk on her heels, toes, or heel-to-toe.  (Tr. 189).  She could squat one-twentieth of the way to the floor, very little.

Mentation of claimant was very tearful throughout the exam.  She had very slight affect.  She was obviously disturbed, depressed, and somewhat anxious.

Strength of the proximal muscle group was 5/5 in her extremities.  Sensation was intact except for the tips of her fingers and toes.  She had some problems with sharp and dull sensation.  Deep tendon reflexes were 2+ in the extremities.

Dr. Sikora noted that claimant had multiple MRI findings consistent with spinal damage with bulging discs in the cervical, lumbar, and thoracic spine.  She had postural limitations as well as sensory limitations.  He suggested light duty as well as therapy for her obvious symptoms of depression.  He said that she could do no bending or stooping, and lift small amounts, at the most 10 pounds infrequently, with more sitting than standing.

**(5) Medical Evaluation by Dr. Charles Lee dated May 13, 2008 to May 15, 2008**.  Dr. Lee found that claimant could lift 20 pounds occasionally and 10 pounds frequently.  (Tr. 193).  She could stand, walk, and sit about six hours in an eight-hour workday.  She had unlimited push/pull ability.  Claimant could perform all postural activities occasionally, except that she could never climb ladders/ropes/scaffolds.  (Tr. 194).

Dr. Lee determined that claimant could perform sedentary or light work.  (Tr. 190, 197).  She was able to perform all routine self-help care, including chores, cooking, shopping, and doing house work.

### (6) Psychiatric Review Technique ("PRT") dated May 19, 2008.

Lawrence Guidry, Ph.D., assessed claimant for intermittent depression. (Tr. 204). He found that she had mild restriction of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence, or pace. (Tr. 211). He determined that she did not have a severe impairment. (Tr. 201).

### (7) Records from Harvey Chiropractic Clinic dated May 26, 2009.[1]

Claimant received chiropractic care for low back pain. (Tr. 221-26).

### (8) Records from Simmesport Family Clinic dated October 16, 2008 to August 6, 2009.

On October 16, 2008, claimant was seen for fibromyalgia. (Tr. 229). She was prescribed Cymbalta.

On April 6, 2009, claimant stated that her pain was "ok" when she took her medications.

On August 6, 2009, claimant stated that she was "hurting all over," and had been having left hip pain and fibromyalgia since a fall two years prior. She was prescribed Ultram, Cymbalta, and Flexeril.

---

[1] Physical therapists and chiropractors qualify as "other sources" under 20 C.F.R. § 404.1513(d) which sources may be considered but are entitled to significantly less weight than "acceptable medical sources." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996).

**(9) Claimant's Administrative Hearing Testimony**. At the hearing on September 3, 2009, claimant was 41 years old. (Tr. 26). She had some college, was in the military, then went to technical college for massage therapy and neuromuscular therapy. She testified that she had worked as a massage therapist since 1997. (Tr. 27).

Claimant testified that she had stopped working after a fall from a swing. She reported having severe left hip pain radiating down the foot, and burning of the spine. She also complained of problems sleeping and sitting on the left side, and burning and tingling in her toes and fingertips. (Tr. 27, 30).

Claimant stated that she was taking generic Flexeril, Mobic, Cymbalta, and Tramadol. She reported that they helped somewhat. (Tr. 28). She also complained of being a little depressed.

Regarding activities, claimant testified that she went from her heating pad to a salt bath. She tried to read anything short-term. She could not stay in one position too long. She stated that she drove very seldomly. (Tr. 29).

As to limitations, claimant testified that she could walk short distances, but suffered afterwards. She said that she could stand about 15 minutes, sit about 30, and could lift a pitcher of orange juice or water. (Tr. 29-30).

**(10) Administrative Hearing Testimony of Shirley Dickey, Vocational Expert ("VE")**. Ms. Dickey classified claimant's past work as a massage therapist or masseuse as medium and a warehouse worker in the National Guard as medium. (Tr. 17). The ALJ asked the VE to assume a claimant of the same age, education, and vocational experience, who could do sedentary work with only occasional climbing, stooping, kneeling, crouching, and crawling. In response, Ms. Dickey identified the positions of sedentary assemblers, unskilled, of which there were 4,080 jobs statewide and 237,224 nationally; telephone solicitor, of which there were 5,840 statewide and 306,360 nationally, and general office clerks, of which there were 41,229 statewide and 1,736,613 nationally. (Tr. 37-38). Ms. Dickie stated that she would put 75 percent of those jobs open given the postural restrictions. (Tr. 38).

    The ALJ changed the hypothetical to sedentary work, alternating sitting, standing, and walking. In response, Ms. Dickie stated that this limitation would eliminate the assembler jobs, but would not affect the others.

    Finally, the ALJ asked whether any jobs would be available if claimant had to take frequent breaks. In response, Ms. Dickie testified that it would reduce the job base to less than one percent.

―――――

**(11) The ALJ's Findings are Entitled to Deference**.  Claimant argues that: (1) the Commissioner failed to give proper weight to Dr. Sikora's opinion in formulating her residual functional capacity ("RFC"); (2) the Commissioner failed to give adequate weight to the July 3, 2007 MRIs of her lumbar and cervical spine and other medical evidence; (3) the Commissioner's RFC is not supported by substantial evidence, (4) the Commissioner's legally flawed RFC led to defective testimony by the vocational expert; thus, the Commissioner failed to meet his evidentiary burden at step 5, and (5) the Commissioner failed find that her depression was a severe impairment at step 2.

First, claimant argues that the Commissioner erroneously found that claimant has the RFC to perform sedentary work with some postural limitations, including only occasional stooping.  [rec. doc. 9, p. 6].  She asserts that the Commissioner dismissed the MRI evidence in "one cursory sentence" because of lack of nerve root compression or spinal stenosis, and ignored evidence showing that she has eight herniated or bulging discs, foraminal narrowing at two levels, and narrowing of the spinal canal, which are "more than sufficient" to cause her severe pain and other symptoms.  (Tr. 16).

To prove disability resulting from pain, an individual must establish a medically determinable impairment that is capable of producing pain.  *Ripley v.*

*Chater*, 67 F.3d 552, 556 (5th Cir. 1995).  Once a medical impairment is established, the subjective complaints of pain must be considered along with the medical evidence in determining the individual's work capacity.  *Id*.  Disabling pain must be constant, unremitting, *wholly unresponsive to therapeutic treatment*, and corroborated in part by objective medical testimony.  (emphasis added).  *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991).

    Here, the ALJ noted that although claimant had evidence of small broad-based herniations in the cervical and lumbar spines, there was no evidence of nerve root compression or spinal stenosis.  (Tr. 19).  This is supported by the cervical MRI report, which showed *small* broad-based posterior disc herniations at C5-6 and C6-7 levels which *borderline narrowed* the AP diameter of the spinal canal, but *did not appear to compress the cord* nor completely obliterate the anterior subarachnoid space; *mild* bilateral intervertebral foraminal narrowing at C5-6 and C6-7, and *mild* posterior bulging of the annulus fibrosis of the C3-4 and C4-5 discs *without focal herniation or compressive signs*.  (emphasis added).  (Tr. 173).  Additionally, the lumbar MRI showed *very small* posterior broad-based disc herniations at L4-5 and L5-S1 that *appeared non-compressive*, and *minute* posterior bulging of the annulus fibrosis of the T11-12 and T12-L1 discs.

(emphasis added).  None of claimant's physicians indicated that these impairments were disabling.  *See Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (substantial evidence supported ALJ's finding that claimant could perform a wide range of sedentary work where no physician who examined her pronounced her disabled).  (Tr. 174).

Further, claimant reported to her physicians that her pain was helped by medication.  (Tr. 229).  She also testified at the hearing that her medicines helped her.  (Tr. 28).  If an impairment reasonably can be remedied or controlled by medication, treatment or therapy, it cannot serve as a basis for a finding of disability.  *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987).

The ALJ determined that claimant's pain was not disabling based the objective evidence.  Whether pain is disabling is an issue for the ALJ, who has the primary responsibility for resolving conflicts in the evidence.  *Chambliss,* 269 F.3d at 522; *Carrier v. Sullivan,* 944 F.2d 243, 247 (5th Cir.1991).  It is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference. *See Wren,* 925 F.2d at 128; *James v. Bowen,* 793 F.2d 702, 706 (5th Cir.1986).  As the ALJ's determination as to pain is supported by the evidence, it is entitled to deference.  *Id.*

Next, claimant asserts that the ALJ improperly disposed of Dr. Sikora's objective findings and conclusions regarding her inability to stoop. The ALJ observed that Dr. Sikora's report was "internally inconsistent," as "he indicated that she could perform light work with lifting/carrying 10 pounds but is unable to bend or stoop." (Tr. 19).

It is well established that "the ALJ has *sole* responsibility for determining a claimant's disability status." (emphasis added). *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (*citing Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994)). Further, the ALJ is free to reject the opinion of any expert when the evidence supports a contrary conclusion. *Id*. Here, none of claimant's treating physicians found that claimant was unable to bend or stoop. Additionally, Dr. Lee determined that claimant could stoop occasionally. (Tr. 194). Thus, it was within the province of the ALJ to reject Dr. Sikora's opinion that she could not bend or stoop.

While claimant argues that the Commissioner's RFC assessment is not supported by the record, the court notes that the ALJ had considered all the evidence and "ha[d] given the claimant the benefit of the doubt by reducing her to sedentary work." (Tr. 19). This is supported by Dr. Lee's assessment, in which he found that, based on claimant's medical records, she was able to perform light

12

work. (Tr. 197). Additionally, as stated above, none of claimant's physicians indicated that her impairments were disabling. *Vaughan, supra.*

Claimant also asserts that the Commissioner's flawed RFC assessment "infected" the ALJ's questions to the vocational expert. [rec. doc. 9, p. 8]. However, the ALJ's hypotheticals included the limitations found in Dr. Lee's RFC assessment. As the ALJ's hypothetical to the vocational expert reasonably incorporated all disabilities of the claimant recognized by the ALJ, and the claimant or her representative had the opportunity to correct deficiencies in the ALJ's question, the ALJ's findings are entitled to deference. *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001); *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

Finally, claimant argues that the Commissioner erred in failing to find that her depression was a severe impairment. [rec. doc. 9, p. 8]. The ALJ noted that although claimant was "tearful" with Dr. Sikora and had been prescribed Cymbalta, claimant had never been diagnosed with depression. (Tr. 18). At the hearing, she testified that she was taking Cymbalta for fibromyalgia, not depression. (Tr. 28). Nothing in the record reflects that claimant ever sought treatment with a mental health professional.

It is well established that the ALJ is not precluded from relying upon the lack of treatment as an indication of nondisability. *Villa v. Sullivan*, 895 F.2d 1019,

1024 (5th Cir. 1990); *Chester v. Callahan*, 193 F.3d 10, 12 (1st Cir. 1999) (gaps in the medical record regarding treatment can constitute "evidence" for purposes of the disability determination); *McGuire v. Commissioner of Social Security*, 178 F.3d 1295 (6th Cir.1999) (gaps in treatment may reasonably be viewed as inconsistent with a claim of debilitating symptoms); *Franklin v. Sullivan*, 1993 WL 133774 (E.D. La. 1993); *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988) (failure to seek aggressive treatment and limited use of prescription medications is not suggestive of disabling condition).

Further, although claimant argues that the ALJ should have considered depression in the RFC assessment process, claimant failed to assert depression as a disability in her applications. At the hearing, she complained of being "a little" depressed. (Tr. 28). *See Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989) (isolated comments by claimant insufficient to raise suspicion of mental impairment necessary to require ALJ to order consultative examination); *Kimbrough v. Secretary*, 801 F.2d 794, 797 (6th Cir.1986) (when claimant had never asserted a mental impairment, no affirmative duty upon ALJ to conduct psychological examinations on all for whom source of pain is not objectively proven to be organic). Thus, the ALJ's finding as to credibility is entitled to great deference. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000).

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.** *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, **79 F.3D**

**1415 (5TH CIR. 1996).**

Signed January 31, 2012 at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE